# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELBERT STONE, | ) 1:05cv1268 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Delbert Stone ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application for Supplemental Security Income on August 1, 2000, alleging disability since December 13, 1999, due to "soreness and stiffness in the shoulders,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On June 16, 2006, the action was reassigned to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

lower back pain, soreness and stiffness in left ankle, memory loss, can't read or write." AR 84-95, 96-105. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 71-74, 76-79, 80. On September 10, 2001, ALJ Koldewey held a hearing, and on May 29, 2002, denied benefits. AR 403-478, 276-289. On September 27, 2002, the Appeals Council remanded the action to the ALJ. AR 296-299.

ALJ Ross held a second hearing on May 13, 2003. AR 479-522. On September 17, 2003, he denied benefits. AR 326-339. On March 31, 2004, the Appeals Council remanded the action for further evaluation. AR 336-339.

ALJ Ross held a third hearing on December 2, 2004. AR 523-557. He denied benefits in a decision dated December 28, 2004. AR 20-31. The Appeals Council denied review on August 26, 2005. AR 7-9.

Hearing Testimony

*May 13, 2003*

ALJ Ross held a hearing on May 13, 2003, in Fresno, California. Plaintiff appeared with his attorney, Robert D. Christenson. Plaintiff's wife, Dianne Stone, also appeared and testified. AR 479.

Plaintiff testified that he was born in 1956 and completed the seventh grade. AR 484. He thought he got his GED in the Army, but couldn't remember. AR 485. He could not remember the last time he worked. AR 486.

Plaintiff was not taking medications and his seizures are controlled by his diet. AR 487. His back hurts most of the time, as does his ankle. AR 488.

In December 1998, Plaintiff was in an altercation at a bar. AR 489. Since then, he doesn't like to be around people and has memory problems. AR 490. He cannot lift and carry a gallon of milk for two to three hours in an eight hour day. AR 492. He can stand for about five minutes as a time. AR 496. He can walk two to three blocks. AR 497.

Plaintiff was in the military from 1974 until 1979, when he fractured his back. AR 509.

1    Plaintiff's wife testified that since Plaintiff's assault in 1998, his mind has changed. He's
2 like a three year old and can't be trusted to cook or look after their three year old son. AR 513.
3 She did not think Plaintiff could handle work because his back hurts and he gets so exhausted.
4 AR 517.

5    *December 2, 2004*

6    ALJ Ross held a supplemental hearing on December 2, 2004, in Fresno, California.
7 Plaintiff appeared with his attorney, Robert D. Christenson. Plaintiff's wife, Dianne Stone, and
8 Vocational Expert ("VE") Thomas Dachelet, also appeared and testified.

9    Plaintiff testified that since his last hearing, he has been put on medication for his heart
10 and has been referred to cardiologist. AR 534. He has chest pains and has to take nitroglycerin
11 one to two times a week. AR 535-536. He has pain in his shoulders, neck and left ankle. AR
12 536-537. He also had problems with his memory. AR 538.

13    Plaintiff completed the seventh grade. AR 538. He cannot read and write very well. AR
14 539.

15    Plaintiff's wife Dianne testified that she and Plaintiff have been married for five years.
16 She knew him before the incident at the bar and testified that he now has memory loss and acts
17 differently. AR 541. He is like a child at times. AR 541. He is no longer allowed to cook
18 because he almost burnt the house down. AR 542. During the day, he sits around the house and
19 watches television or stays in his room.

20    Mrs. Stone explained that she can't send Plaintiff to the store because he'll forget where
21 he's going or what he's going for. Mrs. Stone has a five year old son and she testified that since
22 he got beat up, it's like taking care of two children. AR 543. Plaintiff has pain in his back and
23 ankle. AR 544.

24    When questioned by the ALJ, Mrs. Stone explained that the assault took place in
25 December 1998, at a bar. AR 546. Plaintiff has only worked mowing lawns one or two days at a
26 time in 1999. She did not know why Plaintiff hadn't worked in the previous 15 years. AR 546.

27    For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's
28 age, education and past relevant work. This person could occasionally lift 50 pounds, 20 pounds

frequently, stand, sit or walk at least six of eight hours, and occasionally climb, bend, stoop or kneel. AR 547-548. The VE testified that this person could perform essentially all unskilled, light and sedentary positions. AR 548. This person could also perform 25 percent of medium work.

For the second hypothetical, the ALJ asked the VE to add a limitation in reading and writing. The VE testified that this would result in a 50 percent reduction of available jobs. AR 551.

For the third hypothetical, Plaintiff's attorney asked the VE to assume an individual that could frequently lift 20 pounds, no more than 50 pounds occasionally, can stand and walk no more than six hours, and would be restricted in activities involving bending, stooping, kneeling and overhead activities. AR 552. This would eliminate all medium positions and 50 percent of the light positions. AR 553. The sedentary positions would remain available. AR 553.

Plaintiff's attorney next asked the VE to add mental impairments. This person would have a significant impairment in understanding, remembering and carrying out simple instructions. The VE testified that this person could not perform work in the national economy. AR 54.

If this person had a GAF of 40, he would be unable to work. AR 555.

If this person had a postural limitation of needing to keep his head down, with his chin near his chest, this would preclude work. AR 556-557.

Medical Record

In October 1991, Plaintiff's treating physician Dale J. Cox indicated that Plaintiff was complaining of selective short term memory loss that was impairing only his ability to get back to work as a musician. He was referred for a neurological evaluation. AR 227.

On March 13, 1998, Plaintiff was seen by Frederick R. Young, M.D., for a consultive examination. He complained of pain and weakness in his lumbar spine. His examination was essentially normal and Dr. Young opined that Plaintiff possibly had some degree of degenerative arthritis. He further opined that Plaintiff should be able to perform light duty or desk duty. AR 137-138.

     In December 1998, Plaintiff was treated at Sierra View District Hospital for treatment after an assault at a bar.  AR 234, 239-240.  An MRI of his head showed no intracranial hemorrhage, mass or infarct, inflammatory sinus disease, and subgaleal hematoma adjacent to the left frontal calvarium.  AR 236.  A CT scan of the head showed a small brain contusion or hematoma with some edema.  AR 237.  He was diagnosed with a cerebral contusion and concussion.  AR 240.

     On October 28, 1999, Plaintiff was treated at Sierra View District Hospital for an ankle fracture.  He underwent an open reduction and internal fixation of the fracture and was discharged on October 29, 1999.  AR 158-175.

     On September 19, 2000, Plaintiff was assessed by R. Roy Fratini, Ph.D.  Dr. Fratini explained that the results of the evaluation should be interpreted with marked caution, as Plaintiff seemed to insist to present himself as someone who was markedly disabled.  Plaintiff appeared to understand instructions, but was selective in how he responded.  Plaintiff scored in the mild mental retardation range on intelligence testing, but Dr. Fratini indicated that Plaintiff's intention was to interact with the test in a way that would support his memory dysfunction.  Dr. Fratini diagnosed amnestic disorder due to Plaintiff's report of head trauma, chronic, malingering, depressed mood disorder, not otherwise specified, and alcohol abuse in remission for one year, per Plaintiff.  AR 176-181.  He opined that Plaintiff could understand, remember and carry out simple instructions but may avoid interaction with others as part of his perceived disability.  AR 182.

     On September 23, 2000, Plaintiff underwent a comprehensive neurological examination conducted by Juliane Tran, M.D.  Plaintiff complained of neck pain, back pain and poor memory.  Plaintiff reported that he has had back pain and poor memory since a motor vehicle accident when he was a young boy, after which he remained in a coma for one and one-half years.  After examination, Dr. Tran diagnosed status post traumatic brain injury with mild traumatic brain injury syndrome.  Plaintiff had poor cognitive deficits with poor judgment and abstract thoughts.  He could follow a two to three step command.  He had decreased balance.  Plaintiff could not lift more than 50 pounds occasionally or frequently, and would be restricted in climbing, balancing,

and in activities involving prolonged standing or walking more than six hours.  He would also be limited in overhead activities, and activities involving bending, stooping and kneeling.  AR 183-186.

On October 10, 2000, State Agency physician Archimedes Garcia, M.D., completed a Psychiatric Review Technique form.  He opined that Plaintiff did not have a severe mental impairment.  AR 195-207.  These findings were affirmed on January 16, 2001.  AR 195.

On June 13, 2001, G.A. Almquist, M.D., answered interrogatories and assessed Plaintiff's limitations.  He explained that Plaintiff's back history and complaints did not fit with the lack of medical visits, leading to a finding that Plaintiff may be exaggerating his symptoms.  Based on a review of his medical records, he opined that Plaintiff could sit, stand and walk for a total of eight hours a day, with breaks, could frequently lift 21-25 pounds and occasionally lift 26-50 pounds, and could frequently bend, squat, crawl, climb and reach.  AR 208-214.

Also on June 13, 2001, Plaintiff underwent a CT scan of the head.  The test was normal.  AR 247.

Left shoulder x-rays taken on August 16, 2001, were normal.  Lumbar spine x-rays revealed compression and deformity of L-5, likely the result of prior trauma, moderate components of disc disease at L4-5 and more marked components of disc disease at L5-S1, and early degenerative changes.  AR 218.

On November 5, 2001, Plaintiff saw Rolando C. Young, M.D., for an assessment of his seizures.  His neurologic examination was normal.  He assessed syncopal episode with possible seizures, which would be related to the head injury, improved with Dilantin.  AR 263-264.

On November 6, 2001, Plaintiff saw Leslie J. Lessenger, Ph.D., for a psychological evaluation.  She diagnosed amnestic disorder, not otherwise specified, rule out amnestic disorder due to head trauma, chronic, depressive disorder, not otherwise specified, history of alcohol abuse, and rule out post traumatic stress disorder.  Dr. Lessenger explained that the test results suggest an individual in the borderline range of intellectual ability.  He did not appear to be malingering.  Testing also suggested significant deficits in short-term memory, as well as significant symptoms of depression and anxiety.  She opined that Plaintiff would have moderate

6

difficulties in understanding, remembering and carrying out simple instructions, and would be markedly limited understanding, remembering and carrying out detailed instructions.  He would have moderate restrictions in responding appropriately to work pressures and changes in a routine work setting.  AR 265-275.

Plaintiff saw Dr. Tran again on November 17, 2001, for a comprehensive orthopedic evaluation.  He complained of left ankle pain and back pain.  Plaintiff reported that he could not cook due to being forgetful and cannot do any other activities.  After an examination, Dr. Tran diagnosed status-post left ankle trauma with fracture status-post surgery.  Plaintiff had pain at the ankle joint, decreased range of motion in the left ankle and decreased balance.  His back pain appeared to be muscular or mechanical in nature, with no evidence of lumbar radiculopathy.  He would be restricted with activities involving prolonged standing or walking more than four hours and activities involving climbing, balancing, or working at heights.  He could not frequently bend, stoop or kneel.  He could not lift more than 50 pounds occasionally, 25 pounds frequently.  AR 255-258.

Plaintiff saw Dr. Lessenger for another psychological evaluation on January 21, 2003.  He reported that he is confused at times since being hit in the head a few years ago.  Plaintiff spoke of suicidal thoughts and of hearing and seeing things.  Testing revealed functioning in the borderline range of intellectual ability.  Plaintiff manifested significant memory deficits in all areas. Although Plaintiff reported psychotic symptoms, his test responses were suggestive of malingering.  Dr. Lessenger opined that it was possible Plaintiff was experiencing memory difficulties and at the same time exaggerating psychiatric symptoms.  He could understand, remember and carry out simple instructions.  His memory deficits may affect his ability to respond appropriately to co-workers, etc., and to usual work settings.  AR 314-318.

On June 28, 2003, Plaintiff saw Lance A. Portnoff, Ph.D. for a psychological evaluation. Plaintiff reported a severe memory deficit from head trauma, but Dr. Portnoff believed that this was implausible since long term memory is diffusely distributed throughout the cortex.  While Plaintiff was alert and cooperative for all test procedures, testing revealed that he was not making his best effort and therefore reliable and valid testing could not be completed.  Dr. Portnoff

explained that Plaintiff was clearly exaggerating and feigning mental illness. Because of test invalidity, he was unable to assess Plaintiff's functional limitations. AR 322-325.

Plaintiff was evaluated by Mary K. McDonald, Ph.D., on September 2, 2004. Plaintiff's testing suggested exaggeration and was not consistent with his behavior. He was highly suggestible and endorsed a number of symptoms which were incongruent with one another and indicative of feigning illness. On one test where a score of 6 or more is highly suggestive of malingering, Plaintiff obtained a score of 15. AR 380-382.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of status post internal fixation of the medial malleolus and fibula with left ankle pain, and degenerative disc disease of the lumbar spine with back pain. AR 27. He found that Plaintiff's allegations were not as severe as alleged and that he retained the residual functional capacity ("RFC") to frequently lift and carry 25 pounds, 50 pounds occasionally, to stand and walk at least six hours in an eight hour day and to sit for six hours, and to occasionally climb, balance, stoop and kneel. AR 29. Based on the testimony of the VE, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. Using Medical-Vocational Rule 202.02 as a framework, the ALJ determined that Plaintiff was not disabled. AR 30-31.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (status post internal fixation of the medial malleolus and fibula with left ankle pain and degenerative disc disease of the lumbar spine with back pain) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform jobs that exist in significant numbers in the national economy. AR 30-31.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

9

1  Plaintiff argues that the ALJ (1) failed to properly summarize Dr. Tran's report; (2) erred
2  in failing to find that Plaintiff has a mental impairment; (3) failed to obtain Medical Expert
3  testimony; (4) failed to properly reject the testimony of his wife; (5) erred in failing to adopt the
4  VE testimony supported by the record; and (6) erred in finding Plaintiff not entirely credible.

**DISCUSSION**

A.   Dr. Tran's Report

Plaintiff alleges that the ALJ failed to discuss Dr. Tran's November 7, 2001, opinion that Plaintiff would be restricted in activities involving prolonged standing or walking more than four hours. Plaintiff explains that had the ALJ properly credited this limitation, Plaintiff could not have performed medium or light work.

The ALJ thoroughly discussed both Dr. Tran's September 2000 and November 2001 evaluations. AR 27. He set forth most, but not all, of Dr. Tran's limitations resulting from the November 2001 examination: Plaintiff was restricted to lifting and carrying 25 pounds frequently, 50 pounds occasionally, and could only occasionally bend, stoop and kneel. AR 27. The ALJ also gave substantial evidentiary weight to Dr. Tran's opinion. AR 28.

Plaintiff correctly notes that the ALJ did not set forth Dr. Tran's restriction in activities involving prolonged standing or walking more than four hours. However, any error is harmless. Based on the VE testimony, the ALJ found that Plaintiff could perform a substantial number of jobs at the medium, light and sedentary level. Even if Plaintiff was limited to four hours of standing and walking, he would still be able to perform work at the sedentary level. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

B.   Mental Impairment

Next, Plaintiff contends that the ALJ erred in failing to find that he suffered from a severe mental impairment. Plaintiff cites all of the mental health evidence in the record and argues that he meets or equals Listing 12.02 (Organic Mental Disorder), 12.05(B) and/or (C) (Mental Retardation). In the alternative, Plaintiff argues that Dr. Lessenger's limitations preclude work.

Plaintiff bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if his impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

Here, after reviewing the mental health evidence in the record, the ALJ concluded that Plaintiff failed to establish the existence of a mental impairment. AR 27. In so finding, the ALJ gave substantial evidentiary weight to the observations and opinions of the psychological examiners who repeatedly suspected malingering. AR 27. This was certainly a reasonable interpretation of the evidence.

Indeed, as the ALJ sets forth, numerous psychological examiners suspected that Plaintiff was exaggerating his symptoms. The reports of Plaintiff's malingering span from 2000 to 2004. In September 2000, Dr. Fratini believed that Plaintiff presented himself as someone who was markedly disabled, and that Plaintiff intended to interact with testing in a way that would support his memory dysfunction. AR 181. Similarly, although Dr. Lessenger did not suspect malingering during her first evaluation, his test responses during the second evaluation were suggestive of malingering. AR 317. Dr. Portnoff believed that Plaintiff's memory complaints were implausible and that Plaintiff was clearly exaggerating and feigning mental illness. AR 324. In 2004, Dr. McDonald found that Plaintiff's testing suggested exaggeration and was not consistent with his behavior. He was highly suggestible and endorsed a number of symptoms which were incongruent with one another and indicative of feigning illness. On one test where a score of 6 or more is highly suggestive of malingering, Plaintiff obtained a score of 15. AR 380-382.

Based on the above evidence, much of which is supported by psychological test results, Plaintiff's claim that he meets or equals certain Listings of Impairments is somewhat

disingenuous. In any event, the evidence cited, i.e., evidence of Plaintiff's memory impairment, limitations based on his alleged mental limitations, and various GAF scores, is questionable at best. As discussed above, the overwhelming majority of the evidence demonstrates that Plaintiff was exaggerating his symptoms and many of the tests proved unreliable.

C.      Medical Advisor

Plaintiff next faults the ALJ for failing to call a medical expert to determine if he has a severe mental impairment. Plaintiff contends that pursuant to the order of remand, a medical expert should have been used to review the evidence and opine as to the severity of Plaintiff's mental condition.

The March 31, 2004, order of remand states that "[e]vidence from a medical expert should be obtained to assist the Administrative Law Judge in determining the severity of and limitations, if any, of the claimant's mental condition." AR 338.

At the beginning of the hearing, the ALJ explained that he did not obtain medical expert testimony because of the new consultive examination by Dr. McDonald. AR 525. The ALJ further explained that he may send out interrogatories, if necessary. AR 525.

As the ALJ noted, Plaintiff was sent for another consultive examination in between hearings. Dr. McDonald's report was consistent with the majority of the other mental health evidence and demonstrated that Plaintiff was malingering. During the examination, Plaintiff's testing suggested exaggeration and was not consistent with his behavior. He was highly suggestible and endorsed a number of symptoms which were incongruent with one another and indicative of feigning illness. Dr. McDonald even performed a test specifically designed to identify malingering mental health patients- the M-FAST. A score of 6 or more is highly suggestive of malingering- Plaintiff obtained a score of 15. AR 380-382.

Plaintiff takes the position that the order of remand required a medical expert to review *all* of the mental health evidence. However, this is not entirely clear from the order. Moreover, such a reading would require a departure from Ninth Circuit law as to the sufficiency of a nontreating source, *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of a nontreating source that is based on independent clinical findings may be substantial evidence),

and the circumstances under which additional evidence is necessary, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (duty to develop the record is triggered only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). In any event, given the additional evidence from Dr. McDonald that supported, rather than conflicted with, the prior mental health evidence, the ALJ's decision not to call a medical expert was certainly reasonable.

D.   Plaintiff's Wife's Testimony

Plaintiff argues that the ALJ failed to summarize all of Mrs. Stone's testimony and failed to explain why he rejected it. He points to her testimony that Plaintiff has a poor memory, caused two fires in their house, and is like a little child.

Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that are germane to each witness." *Id.*

In his decision, the ALJ summarized Mrs. Stone's testimony as follows:

> Mrs. Stone testified she and the claimant have been married for five years and have two children, five and 12 years old. She alleged the claimant cannot work due to disabling back and left ankle pain.

He then went on to find that Plaintiff's back and ankle limitations were not as severe as he alleged. AR 28.

Plaintiff is correct that the ALJ did not expressly set forth or reject Mrs. Stone's testimony as to Plaintiff's memory problems and child-like behavior. However, the error is harmless, at most. Given the weight of the medical evidence, it is implausible to think that Mrs. Stone's testimony would have compelled the ALJ to reach a different conclusion as to Plaintiff's mental state. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

E.   VE Testimony

Plaintiff contends that the ALJ should have adopted the VE testimony that, according to Plaintiff, was supported by the evidence. He believes that the ALJ should have adopted the VE's

findings that no jobs exist for someone who is significantly impaired in understanding, remembering and carrying out simple instructions, has a GAF of 40, cannot recall short-term instructions, or has postural limitations associated with having to hold his head down. Plaintiff states that these limitations are supported by Dr. Lessenger and by the testimony of Plaintiff and his wife.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Despite Plaintiff's assertion, the limitations included in his attorney's hypothetical questions are simply not supported by the evidence. Dr. Fratini and Dr. Lessenger opined that Plaintiff could understand, remember and carry out simple tasks. AR 182, 314. As to Plaintiff's GAF of 40, while he did test at this level, the results of his mental health evaluations are certainly suspect given the evidence of malingering and exaggeration. Indeed, Dr. McDonald and Dr. Portnoff deferred a GAF assessment and Dr. Fratini, who indicated a GAF of 50, warned that the evaluation should be interpreted with marked caution. AR 176-181, 322-325, 382. Similarly, Plaintiff's complaints of short-term memory deficit were likewise questioned by the medical professionals. AR 176-181, 314-318, 322-325, 380-382. Finally, there is *no* suggestion in the record that Plaintiff has postural limitations relating to his need to hold his head down.

Accordingly, given the evidence, the ALJ properly rejected Plaintiff's attorney's hypothetical questions.

F.      Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ erred in not finding his allegations totally credible. Plaintiff points to his daily activities pursuant to his and his wife's testimony, and Dr. Lessenger's limitations in support of his contention that his testimony was credible.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In assessing Plaintiff's credibility, the ALJ explained that his allegations that he is unable to read and write were inconsistent with his prior work as a disk jockey, owner of a recording studio, and musician, as well as his military history. AR 26. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence). The ALJ also relied heavily on the numerous instances of malingering noted in the record. Certainly, the ALJ is entitled to view Plaintiff's allegations with skepticism when presented with a record such as the one in the instant case. *Thomas,* 278 F.3d at 958.

As to Plaintiff's physical complaints, the ALJ explained that the objective evidence was not supportive of his claims. For example, although Plaintiff testified that he had chest pain, he has not had a cardiovascular workup, his blood pressure was normal and his heart tones were regular in rate and rhythm. AR 26. Similarly, while Plaintiff alleged severe ankle and back pain, there was no evidence of an inability to ambulate, he was not taking any type of pain medication,

15

he has not received any treatment for ankle or back pain, he does not use a cane or wear a lumbar support, and he has not sought alternative treatments consistent with chronic pain. AR 28. *Thomas,* 278 F.3d at 958; *Tidwell v. Apfel*, 161 G.3d 599, 601-602 (9th Cir. 1998) (lack of objective medical support can be one reason, among others, in a well-reasoned rejection of a claim of excess pain).

Plaintiff's claim is without merit and must be denied.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Delbert Stone.

IT IS SO ORDERED.

Dated:   **October 3, 2006**                        **/s/ Dennis L. Beck**
3b142a                                            UNITED STATES MAGISTRATE JUDGE